```
                 IN THE UNITED STATES DISTRICT COURT

                FOR THE WESTERN DISTRICT OF TEXAS

                          AUSTIN DIVISION

AZIZ A. LATIF,
        PLAINTIFF,

V.                              CIVIL ACTION NO. 1:07-CV-644 LY


GARY LOCKE, SECRETARY
U. S. DEPARTMENT OF COMMERCE
        DEFENDANT.

              PLAINTIFF, AZIZ A. LATIF'S, RESPONSE TO
              DEFENDANT'S MOTION FOR SUMMARY JUDGMENT




                          ANTHONY P. GRIFFIN
                          ATTORNEY-IN-CHARGE

                          A GRIFFIN LAWYERS
                          1115 MOODY
                          GALVESTON, TEXAS  77550
                          409.763.0386
                          1.800.750.5034
                          FACSIMILE NO. 409.763.4102

                          STATE BAR NO. 08455300

                          ATTORNEYS FOR PLAINTIFF
                          AZIZ LATIF
```

TABLE OF CONTENTS

|     |     | Page |
|---|---|---|
| I. | TABLE OF AUTHORITIES . . . . . . . . . . . . . | iii |
| II. | SUMMARY JUDGMENT STANDARD . . . . . . . . . . | 1 |
| III. | APPLICABLE LAW . . . . . . . . . . . . . . . | 1 |
|  | i.  Religious Discrimination/Statutory Provisions | 1 |
|  | ii. Prima Facie Case | 2 |
|  | iii. Undue Hardship | 3 |
| IV. | FACTS IN OPPOSITION TO REQUEST FOR SUMMARY SUMMARY . . . . . . . . . . . . . . . . . . . | 4 |
| V. | ARGUMENT . . . . . . . . . . . . . . . . . . | 4 |
| VI. | CERTIFICATE OF SERVICE . . . . . . . . . . . | 12 |

TABLE OF AUTHORITIES

Page

**CASES**

*Abraham v. Diagnostic Center Hospital Corp. of Texas*,
    138 F.Supp.2d 809 (S.D. Tex. 2001) . . . . . . . . .   8

*Ansonia Board of Education v. Philbrook,* 479 U.S.
    60 (1986). . . . . . . . . . . . . . . . . . . . . .   2

*Bruff v. North Mississippi Health Services*, 244 F.3d
    495 (5th Cir. 2001) . . . . . . . . . . . . . . . .   2

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792
    (1973) . . . . . . . . . . . . . . . . . . . . . .   *passim*

*Trans World Airlines v. Hardison*, 432 UJ.S. 63
    (1977) . . . . . . . . . . . . . . . . . . . . . .   2, 3

*Weber v. Roadway Ex., Inc.*, 199 F.3d 270 (5th Cir.
    2000) . . . . . . . . . . . . . . . . . . . . . . .   2,3,4

*Young v. Southwestern Savings and Loan*, 509 F.2d 140
    (5th Cir. 1975) . . . . . . . . . . . . . . . . . .   2,3,10

**STATUTORY AUTHORITY**

42 U.S.C. § 2000e . . . . . . . . . . . . . . . . . . .   *passim*

Fed. R. Civ. P., Rule 56  . . . . . . . . . . . . . . .   *passim*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

AZIZ A. LATIF,
    PLAINTIFF,

V.                        CIVIL ACTION NO. 1:07-CV-644 LY

GARY LOCKE, SECRETARY
U. S. DEPARTMENT OF COMMERCE
    DEFENDANT.

<u>PLAINTIFF, AZIZ A. LATIF'S, RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff files this, his response to Defendant's Motion for Summary Judgment, and would show as follows:

I.   <u>Summary Judgment Standard</u>.

Plaintiff supports Defendant's Summary Judgment standard citations, but denies and opposes the standard and/burden of proof cited by Defendant in religious discrimination cases; there is no allegation of national origin discrimination in the original complaint (doc. 1).

II.   <u>Applicable Law</u>.

i. Religious Discrimination/Statutory Provisions

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against an employee with respect to any "compensation, terms, conditions or privileges of employment" on the basis of religion (42 U.S.C. s 2000e-2(a)(1)). The Act requires that an employer, short of

"undue hardship", make "reasonable accommodations" to the religious needs of its employees, as follows:

"[t]he term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business" (42 U.S.C. § 2000e(j)).

   ii. Prima Facie Case

Contrary to the Agency's contention in its motion for summary judgment, a claim of religious discrimination is not analyzed under the burden-shifting approach set forth by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny. The proper test is as follows: in order establish a prima facie case of religious discrimination under Title VII, a plaintiff must establish that he (1) had a bona fide religious belief that conflicted with an employment requirement, (2) that he informed the employer of his belief, and (3) that he was discharged for failing to comply with the conflicting employment requirement (*Trans World Airlines v. Hardison,* 432 U.S. 63 (1977); *Weber v. Roadway Exp., Inc*. 199 F.3d 270, 273 (5th Cir. 2000); *Young v. Southwestern Savings and Loan,* 509 F.2d 140, 143 (5th Cir. 1975)).[1]

---

[1] The EEOC guidelines are as follows: "[o]nce an employee notifies the employer…of his or her need for a religious accommodation, he/she has satisfied his obligations under Title VII" (*see* EEOC Compliance Manual §

iii. Undue Hardship

Once the employee has established a prima facie case of religious discrimination, the burden shifts to the employer to demonstrate that accommodating the employee would have created "undue hardship" (*Trans World Airlines v. Hardison,* 432 U.S. 63; *Weber v. Roadway Exp., Inc*. 199 F.3d. at 273-275). An employer incurs an undue hardship when accommodation of an employee's religious beliefs would result in anything more than a *de minimus* cost (*id.; see also Bruff v. North Mississippi Health Services,* 244 F.3d 495, 500 (5th Cir. 2001)).

Undue hardship is not an issue under the EEOC guidelines, and only becomes applicable under federal law where the employer claims that it is unable to offer any reasonable accommodation without such hardship (*Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 68-69 (1986)).[2]

---

628.5 at 4185; *See also* 45 Fed. Reg. 72610 (October 31, 1980)). Under the Guidelines, the failure to accommodate religious observance is, in and of itself, a Title VII violation.

By way of example, in *Young v. Southwestern Savings and Loan,* 509 F.2d at 142-143, the employer had a policy that employees were required to attend staff meetings which commenced with religious devotionals. Plaintiff was told by her supervisor that she needed to attend the meetings, and if she objected to the devotionals, she should simply "close [her] ears" (*id.*). Plaintiff was an atheist, refused to attend the meetings, and resigned when told the meetings were mandatory (*id.*). The court found that the employee had presented prima facie case of religious discrimination.

[2] In *Weber*, the employee truck driver had requested accommodation in the form of not having to be paired with a female driver for overnight driving trips. Other employees would have been disadvantaged, both in terms of scheduling preference and wages, by accommodation of the Plaintiff's request (*Weber,* 199 F.3d at 275). The *Weber* court utilized the Supreme Court's analysis in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977), in which the Court held that Title VII does not require an employer to deny shift and job

II. <u>Facts in Opposition to Request for Summary Judgment</u>.

The facts in opposition to the motion for summary judgment are found attached under Appendix I herein.

III. <u>Argument</u>.

The Defendant argues that summary judgment should be granted because the action taken against Plaintiff was not actionable. Defendant ignores and restyles the underlying complaint raised by Plaintiff.

First, the initial two factors of the test under *Weber v. Roadway Exp., Inc.,* 199 F.3d 270, are not at issue in the instant case. That is, the Agency has not disputed that Plaintiff had a bona fide religious belief which conflicted with the requirement that he attend Mass, or that he had informed the employer of this conflicting belief.

Victor Meza and Elaine Cohen have provided sufficient evidence that support a material issue of fact associated with the Agency's supervisors taking a position hostile to Plaintiff's faith (Appendix I, testimony of Cohen, paragraph 25-34). Even when the Agency allowed accommodation (part-time on Friday and Hajj celebration), the accommodation was followed by incessant comments designed to belittle and shine the spot-light on Plaintiff's faith.

---

preference of some employees, depriving them of their contractual rights, in order to accommodate the religious needs of others.

Plaintiff and Cohen testified that Russell Payne commented at least twenty times or more that he didn't know how the hell they let him take the job if he had to have Friday afternoons off. Payne and Allen would make comments with a wink and nod to bring Latif's beliefs and differences to the attention of the majority's eye. Victor Meza testified that Payne and Allen dislikes minorities and those who were of a different faith (Appendix I, paragraphs 18-22). Meza explained that management knew the request to attend church services made Latif uncomfortable; management openly laughed at his Latif's faith-based dilemma (id. at paragraph 23).

The request to attend church services conflicted with Latif's beliefs (Appendix I, paragraph 35). Plaintiff did not request the agency to stop its practices, but only requested the agency not compel him to undertake an action that was fundamentally in opposition to his beliefs. Plaintiff offered to recruit by other means and could have performed his job without inconveniencing his Agency.

A genuine issue of material fact exists with regard to the third prong of the test, that Latif was demoted and/or discharged because of his religious belief. Latif obtained approval for leave without pay to celebrate the Hajj (appendix I at paragraphs 41-49), and prior to his return he was removed from the Team Leaders position and replaced by Ben Cardenas.

After he returned, he was fired. Even though the Agency does somewhat of a dance by arguing that they did not know Latif had obtained permission for his leave, it hides the contempt for Plaintiff's faith under the accusation associated with the falsification of time records (Defendant's Motion for Summary Judgment at 5-6). The Agency's reasons for the removal of Plaintiff are both pretextual and inconsistent with facts that precede the falsification accusations.

### i. Removal from Team Leader Position

Plaintiff's supervision admitted that they were angry for Plaintiff's absence during his leave of absence and removed him his position, even though they knew that he had received permission from Russell Payne (Appendix I, paragraphs 48, 49, 50). After Plaintiff returned to work and in the initial meetings, management made clear that they wanted Latif to admit that he didn't have permission (precursor to termination); Plaintiff would not likewise agreement with the false assessment (Appendix I, paragraph 61, 62 & 63). Management also insisted that Latif agree to attend Church services (paragraph 62) after his return – this was a precursor to the pretextual attacked directed against Plaintiff.

The Agency contends that Latif was removed from his Team Leader position for failing to provide adequate leadership to his team, because he did not provide adequate notice to

supervision that he would be taking the holiday. The Agency has not disputed that Latif did provide notice and receive authorization from Russell Payne at the inception of his employment in November of 2005. The causal connection between faith and hostility is readily seen when Allen and Drazic agree not to terminate Plaintiff, but simply pretended that they had no more work for him (Appendix I, paragraph 67).

### iii. Termination

The Agency contends that Latif was eventually terminated from his employment because his payroll records had been falsified. A genuine issue of material fact exists as to whether the investigation and its purported conclusions are merely pretextual rationale to conceal the Agency's discriminatory motives.

In the instant case, the Agency does not dispute that Latif had notified his supervisor (Payne) of his need to take off a week for a religious holiday. Although Payne was replaced as supervisor by Drazic, Latif notified both Drazic and Caldwell-Tomas of his absence.

It is telling that the theme of pressure to attend church services remained constant. It was only after Complainant's repeated refusal to attend church services, and his assertion that the pressure was discriminatory, that Allen threatened to submit Latif's payroll records as falsified. Allen essentially

admitted as much in an email, stating "[a]fter his threats about his lawyers I told him I was going to submit the DD-308's as falsified" (ROI at 28). Plaintiff thus asserts that the Agency's stated reason for his termination was pretextual, and that an issue of material fact exists as to whether he was in fact terminated because of his religious beliefs and practices.

In *Abraham v. Diagnostic Center Hospital Corp. of Texas*, 138 F.Supp.2d 809 (S.D. Tex 2001), the district court provided a useful framework for "evidence of pretext". In *Abraham*, plaintiff employee brought suit when he was terminated from employment after incurring several unexcused absences from work in one twelve-month period. Plaintiff employee successfully demonstrated that the defendant employer's stated reason for terminating plaintiff was pretextual, thus defeating defendant's motion for summary judgment on plaintiff's disparate treatment claim. The *Abraham* court's analysis is instructive with regard to identifying the falsity of the Agency's stated reasons for terminating Complainant herein.

The *Abraham* plaintiff established pretext by making a showing that 1) conduct evidencing discriminatory animus was demonstrated by supervisors, 2) these supervisors treated the complainant differently than his/her counterparts of a different religion/those whose religion was unknown, 3) that the supervisors had authority to terminate the complainant. *Id.*

In the instant case, evidence exists that at least two of Latif's supervisors made disparaging remarks about his religion. In addition, Meza description of the hostility behind closed doors is telling (Appendix I, paragraphs 14-24).

Even though Defendant argues that they periodically conduct quality control on the work their recruiters do, it is telling that Allen dispatched an employee to investigate Latif's report even before receiving any indication of a disparity in the paperwork.  In other words, Allen had not yet received Latif's PRISM forms and thus could not conduct a comparison to detect inconsistencies, nor could he accurately direct an investigator to the proper contact persons.  This appears highly irregular, and the Agency has introduced no evidence to suggest that this sort of premature investigation was rote.

It also appears irregular that, although Allen received information to verify that Latif had notified his supervisors of his upcoming absence, he did not reinstate Latif into his position as Team Leader.  Again, immediately after receiving this information and Latif's reiterated refusal to attend church services, Allen launched a premature and groundless investigation into Latif's reported work activities.  The Agency's assertion that the data entry forms and time sheets did not match is simply not supported by the evidence, and the Agency has produced no evidence to suggest that this process of

"quality control" has been conducted with regard to any other employee.

The Agency has neither asserted that it made any attempt to accommodate Plaintiff, nor that it was prevented from accommodating Plaintiff because of any "undue burden".  Further, under the analysis provided by the Fifth circuit in In *Young v. Southwestern Savings and Loan,* 509 F.2d at 143, any argument that allowing employees to stand outside the churches - as opposed to actually sitting in on the services - amounted to an accommodation must fail.  Such assertion would be comparable to the defendant bank manager's statement in *Young*, in which the manager stated that the plaintiff employee, if objecting to religious speeches at the beginning of staff meetings, could simply cover her ears.

The motion for summary judgment should be denied.

DATE:   June 16, 2009.

                        Respectfully submitted,

                        /s/ ANTHONY P. GRIFFIN
                        _____

                        ANTHONY P. GRIFFIN
                        ATTORNEY-IN-CHARGE

A GRIFFIN LAWYERS
1115 MOODY
GALVESTON, TEXAS   77550
409.763.0386
1.800.750.5034
FACSIMILE NO. 409.763.4102

STATE BAR NO. 08455300

ATTORNEYS FOR COMPLAINANT
AZIZ A. LATIF

CERTIFICATE OF SERVICE

This is to certify that this the 16th day of June, 2009, the foregoing Plaintiff's Response to Defendant's Motion for Summary Judgment was forwarded to opposing counsel by facsimile transmission and regular mail, to-wit:

DANIEL M. CASTILLO
ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY -
JOHN E. MURPHY, ACTING UNITED STATES ATTORNEY
816 CONGRESS AVENUE, SUITE 1000
AUSTIN, TEXAS  78701


/S/ ANTHONY P. GRIFFIN


_____

ANTHONY P. GRIFFIN

c:word.latif.azis.response_motion_summary_judgment.2006.2865